**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                              :

**ADONNA FROMETA,**                           :
                                              :

        **Plaintiff,**                   :
                                            :      **07 Civ. 6372 (HB)**

        **- against -**                 :
                                              :      <u>**OPINION &**</u>

**MARIO E. DIAZ-DIAZ and**            :      <u>**ORDER**</u>
**ALL AMERICAN HAULERS AND RECYCLING,** :
                                              :

        **Defendants.**                 :
                                              :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff Adonna Frometa moves *in limine* to preclude the introduction of her employment records as evidence at trial. Defendants move *in limine* (1) to preclude from evidence the testimony and life care plan of Dr. Charles Kincaid, (2) to be reimbursed for Dr. Kincaid's surcharge for his deposition, (3) to preclude the diagnostic film taken during a procedure performed by Dr. Ramesh Babu, (4) to preclude from evidence the testimony of Defendant Mario Diaz-Diaz, (5) to preclude the testimony of a representative of Geico Insurance Company, (6) to preclude the testimony of a representative of Carolina Casualty Insurance Company, and (7) to preclude the testimony of a representative of State Farm Insurance. For the reasons set forth below, Plaintiff's motion *in limine* is denied, but the prejudicial portions of her employment records must be redacted. Defendants' motions *in limine* numbered one through four above are denied, and Defendants' motions numbered five through seven are granted.

      A district court "should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Loussier v. Universal Music Group, Inc.*, No. 02 Civ. 2447, 2007 WL 1098687, at *1 (S.D.N.Y. Apr. 11, 2007) (citation omitted).

## I.  DISCUSSION

<u>**A.**</u>    <u>**Plaintiff's Motion to Preclude Her Employment Records**</u>

      Defendants seek to introduce Plaintiff's employment records from Rick's Cabaret to show that she continued to work in a physically demanding job for ten weeks following the accident, including nine of the first fourteen days, to impeach her credibility because during her

deposition she testified that she worked for a lesser amount of time after the accident, and (3) to suggest that she was involved in a subsequent motor vehicle accident in March 2007.

Plaintiff contends that her employment records from Rick's Cabaret, where she worked as a dancer, and Excel Aire, where she worked as a cabin attendant, are not relevant because she does not claim lost wages.   Plaintiff also argues that these employment records should be precluded pursuant to Fed. R. Evid. 403 because of the danger of "unfair prejudice." Specifically, section 6 of the Rick's Cabaret Entertainer Guidelines required Plaintiffs and other dancers to follow certain modes of comportment with respect to their body parts and underwear, in graphic language that could indeed shock the jury and cause unfair prejudice to Plaintiff.

Section 6 of the Entertainer Guidelines should be redacted.   Other sections, which are not sensational, are relevant because they could lead a reasonable jury to infer that Plaintiff's job was physically demanding and that her injury was not a serious one since she continued to work following the accident.   For example, the Entertainer Guidelines provide that "[a]ll entertainers are required to dance on the stage" and that "[s]hoes must be high heeled and at least three (3) inches in height."

Further, the Excel Aire records show that Plaintiff applied for a job with Excel Aire as a cabin attendant following the accident, a fact that could lead a reasonable jury to draw inferences as to whether Plaintiff sustained a serious injury.   Therefore, Plaintiffs' employment records are admissible, with redaction as described above and as permitted by the Court.

**B.**      **Defendant's Motion to Preclude the Testimony and Life Care Plan of Dr. Kincaid**

Defendants seek an order to preclude the testimony and life care plan of Plaintiff's expert, Dr. Charles Kincaid.   First, Defendants argue that Plaintiff did not provide them with Dr. Kincaid's *curriculum vitae* in violation of Fed. R. Civ. P. 26(a)(2)(B).   Plaintiff's counsel insists that he did so.   This issue is now moot because Defendants' motion *in limine* was submitted in May, Defendants undoubtedly received the *curriculum vitae* well before this September trial, and any failure on Plaintiff's part to provide it appears no more than a clerical mistake.

Second, Defendants argue that Dr. Kincaid's life care plan is inadmissible under the standard articulated by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).   Specifically, Defendants contend that Dr. Kincaid's life care plan is based on conjecture since he never spoke to any medical doctors (but only medical staff), never looked at past bills for any of Plaintiff's past treatments, and admits that growth rates and offsets to present value would have to be calculated by an economist but an economist was never retained.

Here, Plaintiff shoulders the burden of establishing by a preponderance of the evidence that the requirements of Fed. R. Evid. 702, as interpreted by *Daubert*, are satisfied. *See U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 n. 10 (1993)). The district court must ensure that expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 597. The test, however, is a "flexible one." *Id.* at 594. To determine whether proposed expert testimony constitutes "scientific knowledge," the Court should consider: (1) whether the theory/technique has or can be tested, (2) whether the theory has been subjected to peer review or publication, (3) the known rate of error, and (4) whether the theory or technique has been generally accepted. *Id.* at 592-94.

Although the district court must ascertain the reliability of an expert's methodology, "it does not necessarily require that a separate hearing be held in order to do so." *Williams*, 506 F.3d at 161 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Plaintiff asserts that Dr. Kincaid's life care plan satisfies Fed. R. Evid. 702 and the *Daubert* standard for the following reasons: (1) the report is based on Dr. Kincaid's expertise in life planning, (2) Defendants have not submitted any scientific evidence or expert to support their argument that Dr. Kincaid's report is speculative, (3) Dr. Kincaid conducted a scientific survey of the costs of treatment in the geographic area where Plaintiff lives, (4) Dr. Kincaid was retained to determine Plaintiff's life care needs and not to calculate the present value of the cost of treatment in the future, and (5) the jury, not Dr. Kincaid, is charged with setting an appropriate value with suitable discounts to today's dollars of the cost of future treatment.

Dr. Kincaid's academic credentials include a B.A. in Psychology, a Certificate in Rehabilitation Management, a Masters in Criminal Justice Administration, a Ph.D. in Rehabilitation Counseling, and a Certificate in Life Care Planning. Dr. Kincaid also has five separate professional licenses, has seven publications and has appeared in court fifty-three times over the past four years.

In light of Dr. Kincaid's experience and the evident research that he conducted and that is reflected in his life care plan, including extensive quotes from Plaintiff's medical records, the *Daubert* criteria have been met. Moreover, Dr. Kincaid's plan is essential to Plaintiff's claim for future medical expenses, which she alleges result from the accident. Therefore, Defendants' motion is denied and Dr. Kincaid's testimony and life care plan are admissible.

**C.**       **Defendants' Motion for Reimbursement of $1,000 Surcharge Paid to Dr. Kincaid**

Dr. Kincaid, the life care planner retained by Plaintiff to assess her future medical needs and expenses, requires, pursuant to his fee schedule, a $1,000 "surcharge" for all matters scheduled with fewer than 30 days' notice.  Because Plaintiff disclosed Dr. Kincaid's life care plan to Defendants on May 1, 2008 and the initial discovery deadline was May 19, 2008, one week before the original trial date, Defendants were unable to provide Dr. Kincaid with 30 days' notice of his deposition.  Defendants deposed Dr. Kincaid for two hours on May 12, 2008 and paid his hourly fee of $325 in addition to his $1,000 surcharge.  Defendants move for an order directing that they be reimbursed for the surcharge.  Plaintiff argues that the motion should be denied primarily because Defendants were aware of the surcharge prior to noticing his deposition since they had a copy of his fee schedule.

Unless "manifest injustice" would result, Rule 26(b)(4)(C) requires the party seeking discovery to pay reasonable fees for the deponent's time.  Eight factors are relevant to the reasonableness of an expert's fee: (1) the witness's area of expertise, (2) the education and training required to provide the expert insight that is sought, (3) the prevailing rates for other comparably respected available experts, (4) the nature, quality and complexity of the discovery responses provided, (5) the cost of living in the particular geographic area, (6) the fee being charged by the expert to the party who retained him, (7) fees traditionally charged by the expert on related matters, and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.  *See Frederick v. Columbia Univ.*, 212 F.R.D. 176, 177 (E.D.N.Y. 2003) (citing *Adam v. Mem'l Sloan Kettering Cancer Ctr.*, No. 00 Civ. 9377, 2002 WL 1401979, at *1 (S.D.N.Y. June 28, 2002)).

Dr. Kincaid's area of expertise is in assessing the future needs and costs of individuals with major medical problems; he is a certified life care planner and licensed rehabilitation counselor.  His life care plan is essential to Plaintiff's damages claim.  The prevailing rates for comparable experts are unknown.

Another of the eight factors, Dr. Kincaid's charges to Plaintiff, however, are known, if we assume that such charges are in accordance with his printed fee schedule.  Dr. Kincaid's initial retainer for a life care plan, which he produced for Plaintiff, is $3,500, with an additional hourly rate of $200 for work applicable to the retainer, and his fee for a half-day court appearance is $2,500.  Because Defendants deposed Dr. Kincaid for two hours, and his hourly rate for depositions is $325 with a minimum of three hours, Defendants appear to have paid Dr.

4

Kincaid $1,975 for his deposition, inclusive of the $1,000 surcharge.  Defendants, therefore, have likely paid Dr. Kincaid less than one-third of the minimum amount that Plaintiff is paying for his services, *i.e.*, a total of $6,000.

Dr. Kincaid's surcharge is not manifestly unjust.  First, his report is dated May 1, 2008, and was disclosed to Defendants that same day, prior to the May 19 discovery deadline.  In the limited case law on "manifest injustice" in the context of Fed. R. Civ. P. 26(b)(4)(C), the term is generally used where one party has acted in bad faith or where paying the expert's fee will cause a party undue hardship.  For example, the Seventh Circuit has held that it was manifestly unjust for a party to disclose an expert for the sole purpose of adding expense and distracting the opposition from trial preparation.  *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 920 (7th Cir. 2002).  That is not the case here.

Therefore, the Court declines to order reimbursement of the surcharge paid by Defendants to Dr. Kincaid.

**D.    Defendant's Motion to Preclude Diagnostic Film Taken During the Procedure Performed by Dr. Babu**

On May 17, 2007, Dr. Ramesh Babu performed back surgery on Plaintiff.  In a letter dated September 20, 2007, Defendants requested from Dr. Babu all records, tests, and diagnostic film associated with his care of Plaintiff, but the records produced by Dr. Babu did not include the diagnostic film taken during the May 17 procedure.  Months later, on May 9, 2008, Plaintiff's counsel told Defendants' counsel that he had, that week, obtained such film from Cabrini Medical Center, where Dr. Babu had performed the surgery.  On May 12, 2008, Defendants served their motion *in limine* to preclude from evidence such diagnostic film on the ground that Plaintiff failed to provide it sooner.  Later in the day on May 12, 2008, Plaintiff did provide such film to Defendants.

Defendants argue that Plaintiff failed to disclose the film in a timely manner pursuant to Fed R. Civ. P. 26(e)(1), given that the film had been made more than one year earlier, on May 17, 2007.  Rule 37(c)(1) permits the court to preclude evidence that a party has failed to provide as required by Rule 26(a) or (e), unless the failure was substantially justified or harmless.  Plaintiff argues that Defendants' motion is moot because Plaintiff produced the film on May 12, 2008.  Further, Dr. Babu did not have the film in his possession when he responded to Defendants' request; the film was at Cabrini Medical Center.  Defendants had access to all of Plaintiff's medical records at Cabrini Medical Center, but never asked to see the film.

Now that the parties have had more than three additional months to prepare for trial—since the trial date was postponed from May to September 2008—Defendants and their expert have had ample time to review the film.  Moreover, Plaintiff does not appear to have withheld the film in bad faith, since Plaintiff's counsel obtained it from Cabrini Medical Center only a couple of days before he disclosed it to Defendants.  Therefore, the diagnostic film is admissible.

**E.**     **Defendants' Motion to Preclude the Testimony of Defendant Diaz-Diaz**

Plaintiff intends to call Defendant Diaz-Diaz as a witness and question him about the force of impact, speed and weight of Defendants' garbage truck when it rear-ended Plaintiff's vehicle.  Plaintiff argues that this information is relevant to whether Plaintiff sustained a "serious injury" pursuant to N.Y. Ins. Law § 5102(d).  According to Plaintiff, precluding Diaz-Diaz's testimony will prevent Plaintiff from explaining to the jury "what force of impact made her suffer such serious injuries resulting from this accident."

Defendants argue that since they have already conceded liability, Diaz-Diaz's testimony is not relevant to proximate cause, serious injury or damages within the meaning of N.Y. Ins. Law § 5102(a).  Defendants also argue that Diaz-Diaz's testimony is barred by Fed. R. Evid. 701, which prohibits testimony based on "scientific, technical, or other specialized knowledge" by lay witnesses because, even if the truck's impact, speed or weight were relevant, an expert in biomechanics must testify as to these matters, not Defendant Diaz-Diaz.

In light of the relatively low bar set by Fed. R. Evid. 401, *see Daubert*, 509 U.S. at 587, Defendant Diaz-Diaz's recollections of the accident are relevant because they could help the jury determine whether the accident was likely to have caused all of the injuries alleged by Plaintiff.  Further, Defendants' argument that Fed. R. Evid. 701 bars Diaz-Diaz's testimony is unavailing.  While Rule 701 disallows opinion testimony by lay witnesses, Diaz-Diaz's testimony is not based on scientific, technical or other specialized knowledge, but rather his personal knowledge about the truck that he was driving and the sensations that he experienced at the time of the collision.  Therefore, Plaintiff may call Defendant Diaz-Diaz as a witness.

**F.**     **Defendants' Motion to Preclude the Trial Testimony of a Representative of Geico Insurance Company**

Defendants argue that the testimony of an insurance adjustor from Geico Insurance Company, Plaintiff's no fault insurer, is not relevant to the issues of proximate cause, serious

injury or damages and that, even if it were, the testimony should be precluded as misleading and prejudicial.[1]

To recover damages pursuant to N.Y. Ins. Law § 5104(a) for personal injury arising out of a driver's negligent use of a motor vehicle, a plaintiff must prove either that he or she has sustained either a "serious injury," as defined by N.Y. Ins. Law § 5102(d), or an economic loss greater than "basic economic loss," as defined by N.Y. Ins. Law § 5102(a).

Here, Plaintiff alleges that as a result of the accident she will suffer an economic loss greater than "basic economic loss," which is capped at $50,000 pursuant to N.Y. Ins. Law § 5102(a). Plaintiff argues that the medical expenses incurred by Geico, her no fault insurer, show the extent of her economic loss and that without such testimony and relevant insurance records, she will be unable to prove that she suffered greater than "basic economic loss."

Plaintiff's argument, however, is unavailing because Plaintiff need not prove to the jury that she suffered greater than "basic economic loss." Instead, the jurors will be instructed to state, in a special interrogatory on their verdict sheet, the *total* amount of economic loss. The Court, then, will deduct the first-party benefits received by Plaintiff from Geico from the total recovery awarded by the jury, pursuant to N.Y. Ins. Law § 5104(a), which makes "basic economic loss" unrecoverable by Plaintiff. *See Austin v. Meade*, 685 N.Y.S.2d 308, 309 (N.Y. App. Div. 1999); *Johnston v. Colvin*, 535 N.Y.S.2d 833, 835 (N.Y. App. Div. 1988). Indeed,

> the receipt of first-party benefits has no relevance to the case in view of the fact that the amount of such benefits will not be included in the ultimate damage award, which will compensate only for damage elements not recoverable under the first-party system. Evidence of plaintiff's receipt of first-party benefits should be excluded . . . .

New York Pattern Jury Instructions—Civil § 2:285A, cmt. (2007).

Because the Court will deduct the first-party benefits paid by Geico from the total damages award, if any, the testimony of Geico's representative, as well as the Geico insurance records, are not relevant to the jury's deliberations here. Defendants' motion is granted.

## G.   Defendants' Motion to Preclude the Trial Testimony of a Representative of Carolina Casualty Insurance Company

Defendants also argue that the testimony of an insurance adjustor from Carolina Casualty Insurance Company, Defendants' insurer for the sanitation truck, is not relevant to the issues of

---

[1] Defendants' additional argument that the testimony should be precluded pursuant to Fed. R. Evid. 409 is unavailing because Rule 409 concerns liability and liability is not at issue in this trial.

proximate cause, serious injury or damages and that, even if it were, the testimony should be precluded as misleading and prejudicial.

Plaintiff argues that the Carolina Casualty Insurance adjustor is the only person qualified to testify as to the cost of repair of the vehicles involved in the accident and that this is relevant to whether she sustained a "serious injury" pursuant to N.Y. Ins. Law § 5102(a).  Specifically, she contends that the jury will be able to infer from the cost to repair the vehicles the force of the collision's impact, and thus gravity of Plaintiff's injury.

Both the insurance records and the testimony of the insurance adjustor from the Carolina Casualty Insurance Company have little probative value because the cost to repair the vehicles is not a reliable proxy for the force of impact of the collision, and, even if it were, its relevance to whether Plaintiff sustained a "serious injury" is dubious and could confuse the jury as to the relevant issues.  Moreover, the impact of the collision is likely to be the subject of testimony of both Defendant Diaz-Diaz and Plaintiff herself, who experienced the accident firsthand. Therefore, the testimony of the representative of Carolina Casualty Insurance Company and the Carolina Casualty Insurance Company records are not relevant and inadmissible.

## H.    Defendants' Motion to Preclude the Trial Testimony of a Representative from State Farm Insurance Company

State Farm Insurance Company is the insurance carrier for Defendant Diaz-Diaz's personal automobile, and not the sanitation truck involved in the accident at issue here.  The sanitation truck, which Diaz-Diaz was driving in the course of his employment was insured by Carolina Casualty Insurance Company through his employer, Defendant All American Haulers and Recycling.

Defendants argue that the testimony of a State Farm insurance adjustor is irrelevant.[2] Plaintiff argues that the State Farm representative's testimony is relevant to the issues of serious injury and damages within the meaning of N.Y. Ins. Law § 5102(a) because the representative will provide repair estimates, photos and actual repair costs of the vehicles involved in the accident.  Plaintiff argues that such information will help the jury decide whether Plaintiff sustained a "serious injury."

---

[2] Defendants' additional argument that such testimony is barred by Fed. R. Evid. 411 is unavailing. Pursuant to that rule, evidence of whether a person was insured against liability is inadmissible only on the issue of whether the person acted negligently or otherwise wrongfully.  Fed. R. Evid. 411 is not relevant because liability for the accident is not before the jury.

Plaintiff's argument, however, seems disingenuous because it is clear that State Farm did not insure either of the parties' vehicles. State Farm insures Diaz-Diaz's personal vehicle, not the sanitation truck that he was driving at the time of the accident. Because Plaintiff's counsel admits that he was the first to notify State Farm of his client's bodily injury claim, approximately one year after the accident, it defies logic to suggest that State Farm took photos of the vehicles or provided repair estimates. Moreover, State Farm has expressly disclaimed any coverage because the Diaz-Diaz's personal vehicle was not involved in the accident and the accident occurred in the course of Diaz-Diaz's employment. Any additional coverage that might be provided by Diaz-Diaz's personal policy with State Farm must be settled by a post-judgment declaratory motion, and the issue is not appropriate at this stage.

Therefore, Defendants' motion is granted.

## II. CONCLUSION

For the foregoing reasons, Plaintiff's motion to preclude the introduction of her employment records as evidence at trial is DENIED, but certain portions of those records may be redacted, with the Court's permission; Defendants' motion to preclude from evidence the testimony and life care plan of Dr. Charles Kincaid is DENIED; Defendants' motion to be reimbursed for Dr. Kincaid's surcharge is DENIED; Defendants' motion to preclude the diagnostic film taken during a procedure performed by Dr. Ramesh Babu is DENIED; Defendants' motion to preclude the testimony of Defendant Mario Diaz-Diaz is DENIED; Defendants' motion to preclude the testimony of a representative of Geico Insurance Company is GRANTED; Defendants' motion to preclude the testimony of a representative of Carolina Casualty Insurance Company is GRANTED; and Defendants' motion to preclude the testimony of a representative of State Farm Insurance is GRANTED.

**IT IS SO ORDERED.**

**New York, New York**

**September** \_\_\_\_\_ **, 2008**

**U.S.D.J.**

9