UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=====================================X      Index No. 07CIV6372

ADONNA FROMETA,

                              Plaintiff,          **NOTICE OF MOTION**

            -against-

MARIO E. DIAZ-DIAZ, ALL AMERICAN HAUELRS
RECYCLING,

                              Defendants.
=====================================X

    **PLEASE TAKE NOTICE**, that upon the annexed affirmation of Slawek W. Platta, Esq.,

dated November 3rd, 2008, and upon all papers filed and all the proceedings previously had

herein, the plaintiff ADONNA FROMETA will move this Court, in front of Honorable Harold

Baer Jr., at the Courthouse located at 500 Pearl Street, New York, New York on the 21st day of

November, 2008, at 9:30 a.m., or as soon thereafter as counsel can be heard, for an Order

pursuant to FRCP Rule 50(b) to set aside the verdict rendered in favor of defendants and grant

plaintiff judgment as a matter of law as to the first interrogatory of the verdict sheet, and for a

new trial for the remaining interrogatories, and pursuant to Fed. R. Civ. P. 59(a) to set aside the

verdict of no proximate cause and for such other relief as this Court deems just and proper.

    **PLEASE TAKE FURTHER NOTICE**, that answering papers, if any, must be served

within fifteen days after service of the moving papers, pursuant to the decision of Honorable

Harold Baer Jr. dated October 8th, 2008.

Dated: November 3, 2008
      New York, New York

                        Yours etc.,
                        SLAWEK W. PLATTA, PLLC

                        By: Slawek W. Platta, Esq. (SP 2699)
                        Attorneys for Plaintiff
                        42 Broadway, Suite 1927
                        New York, New York 10004
                        (212) 514-5100

To:
Wilson Elser Moskowitz, Edelman & Dicker, LLP
Attorneys for Defendants
150 E 42nd Street
New York, NY 10017-5639
212-490-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
====================================X      Index No. 07CIV6372
ADONNA FROMETA,

        Plaintiff,    **AFFIRMATION IN SUPPORT**

    -against-

MARIO E. DIAZ-DIAZ, ALL AMERICAN HAUELRS
RECYCLING,

        Defendants.
====================================X

   Slawek W. Platta, Esq., an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following pursuant to FRCP Rule 11.

## INTRODUCTION

1. I am a member of the law firm of SLAWEK W. PLATTA, PLLC, attorneys for the plaintiff in the above named action and, as such, am fully familiar with the facts, circumstances and proceedings herein. The source of my knowledge is the file and records maintained by my law firm and my participation in the case.

2. This affirmation is submitted in support of the instant motion pursuant to Fed. R. Civ. P. 50(b) to set aside the verdict rendered in favor of defendants and grant plaintiff judgment as a matter of law as to the first interrogatory of the verdict sheet, and for a new trial for the remaining interrogatories. As a matter of law, it has been established that plaintiff suffered injuries that were a proximate cause of the February 14, 2007 accident, and therefore the jury verdict could have only been based on pure speculation and guesswork.

3. Plaintiff, Adonna Frometa, further moves pursuant to Fed. R. Civ. P. 59(a) to set aside the verdict of no proximate cause and for a new trial. The great weight of credible evidence showed that plaintiff suffered injuries related to the February 14, 2007 accident, for which she underwent extensive medical treatment. The jury did not reach the interrogatory concerning the "serious injury"

categories of Insurance Law § 5102(d). It rendered a verdict of no proximate cause as to *any* injury related as to the subject accident. This was against the great weight of credible evidence, warranting a new trial.

4. Finally, plaintiff, Adonna Frometa, moves to set aside the jury verdict on the grounds that the defense counsel's inflammatory and prejudicial comments about plaintiff's counsel, misstatements of law, and reliance on matters not in evidence during the summation substantially prejudiced Ms. Frometa's right to a fair trial.

## PRELIMINARY STATEMENT

5. This is a post-trial motion after the trial of this matter that was concluded on September 11, 2008, when the jury returned a verdict founding that Ms. Adona Frometa did not prove that she suffered *any* injury that was a proximate cause of the February 14, 2007 automobile accident.

## STANDARD OF REVIEW

A. *Standard for Judgment as a Matter of Law Pursuant to Rule 50(b)*

6. In pertinent part, Rule 50(b) states that "the movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment . . . [and] may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law." *See gen. Remee Prods. Corp. v. Sho-Me Power Elec. Coop.,* 2003 WL 124517, *2 (S.D.N.Y.2003) (Baer, J.), *quoting* Fed.R.Civ.P. 50(b).

7. To decide whether judgment as a matter of law is warranted, the Court must decide "whether the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached." *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 688 (2d Cir.1983). The trial court should grant judgment as a matter of law only when: (1) there is such a complete absence of

evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded people could not arrive at a verdict against the movant. *Lambert v. Genesee Hosp.,* 10 F.3d 46, 56 (2d Cir.1993), *cert. denied,* 511 U.S. 1052 (1994). The evidence is viewed in the light most favorable to the opponent and all credibility assessments and inferences are drawn in favor of the non-movant. *EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2d Cir.1994).

B. *Standard for Motion for a New Trial Pursuant to Rule 59(a)*

8. In pertinent part, Rule 59(a) states that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

9. The decision whether to grant a new trial following a jury trial under Rule 59 is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992), *cert. denied,* 508 U.S. 952 (1993). In considering whether a verdict is so erroneous as to justify a new trial, the district court "is free to weigh the evidence and 'need not view [the evidence] in the light most favorable to the verdict winner.'" *Farrior v. Waterford Bd. of Educ.,* 277 F.3d 633, 634 (2d Cir.2002), *quoting DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 134 (2d Cir.1998).

## THE TRIAL TESTIMONY

10. On February 14, 2007, Ms. Adona Framata was in the driver's seat of her SUV, which was fully stopped, when her car was rear-ended by a 60,000-pound (or 40,000 unloaded) sanitation truck causing severe damage.[1]

11. Ms. Frometa lost consciousness as a result of the impact.[2] An ambulance was called and the paramedics rendered the first assistance.[3] The EMS report notes that Ms. Frometa suffered injury to her spine; she was placed on a long backboard, with a cervical collar, her head was immobilized and she was transported to Cabrini Medical Center for emergency care.[4] The emergency room records of Cabrini hospital show that she had pain intensity of 9 (in the scale of 0 to 10) and that the pain started with the car accident.[5] A CT-scan was performed, medications were administered, and she was discharged with prescription pain medications and instructions to follow up with a doctor for treatment.[6]

12. On February 23, 2007, she came under the care of Dr. Albert Villafuerte, Diplomat of American Board of Physical Medicine and Rehabilitation.[7] Ms. Frometa complained of neck pain radiating down intracapsual area of both shoulders, with numbness and tingling on both upper extremities.[8] Ms. Frometa also complained of low back pain on both sides radiating down to both lower extremities.[9] Dr. Villafuerte prescribed physical therapy to decrease pain, recommended Ms. Frometa to a neurologist, and referred her for MRIs of cervical and lumbar spine.[10]

---

[1] Frometa, p. 182 – Exhibit 28. See also the photographs (Exhibit 25) showing Ms. Frometa's car after the accident, recognized by Ms. Frometa during her trial testimony.  See pp. 182-183 – Exhibit 28. Diaz, p. 68 – Exhibit 28.

[2] Frometa, p. 182 – Exhibit 28.

[3] Frometa, p. 182 – Exhibit 28. See also EMS Report – Exhibit 9.

[4] EMS report – Exhibit 9. See also Frometa – Exhibit 28, p. 182.

[5] Cabrini Medical Center records – Exhibit 10.

[6] Frometa, p. 184 – Exhibit 28. See also Cabrini Medical Center records – Exhibit 10.

[7] Frometa, p. 185 – Exhibit 28. See also Dr. Villafuerte's records from Midtown Medical Practice, P.C. – Exhibit 11.

[8] Dr. Villafuerte's records – Exhibit 11.

[9] Dr. Villafuerte's records – Exhibit 11.

[10] Dr. Villafuerte's records – Exhibit 11. Frometa, p. 185 – Exhibit 28.

13. On March 10, 2007, the MRIs were performed.  The cervical spine MRI showed that she suffered, *inter alia*, "C3/4 posterior disc herniation with ventral CSF [cerebrospional fluid] impression."[11] The lumbar spine MRI showed that she suffered, *inter alia*, L5/S1 posterior disc herniation.[12]

14. After the MRIs, on March 27, 2007, she saw Dr. Arden Kaisman, a pain management specialist, who reviewed the cervical spine MRI, noted that a herniation exists and recommended epidural steroid injections.[13] Ms. Frometa, afraid of needles, did not agree at this point to undergo epidural injections.[14]

15. Dr. Kaisman recommended that Ms. Frometa see Dr. Ramesh P. Babu, a board certified neurosurgeon and Assistant Professor of Clinical Neurosurgery at New York University School of Medicine.[15] Dr. Babu reviewed the MRI films of plaintiff and opined that she suffered herniations at the C3/4 and L5/S1 levels, compressing on the nerve roots between L5/S1 vertebras, and at the C3/4 level.[16] Dr. Babu recommended surgical intervention to remove the herniated discs.[17] He performed hemilaminotomy and microdiscectomy in the lower back on May 17, 2007.[18] The inter-operative x-rays were taken.[19] The surgery was partially successful, and it helped Ms. Frometa to regain the feeling of her legs.[20] However, she still had symptoms necessitating further care.[21] Dr. Babu opined, within a reasonable degree of medical certainty, that the February 14, 2007 accident was a direct cause of Ms. Frometa's injuries.[22]

16. Dr. R.C. Krishna, a board certified neurologist and Diplomat of the American Board of Psychiatry and Neurology, found that Ms. Frometa showed objective evidence of focal abnormities in her neck

---

[11] Cervical spine MRI report – Exhibit 1.
[12] Lumbar spine MRI report – Exhibit 2.
[13] Dr. Kaisman's records – Exhibit 13. Frometa, pp. 189-190 – Exhibit 28.
[14] Frometa, p. 190 – Exhibit 28.
[15] Frometa, p. 190 – Exhibit 28. Babu, pp. 32-34 – Exhibit 28.
[16] Dr. Babu, pp. 34-38 – Exhibit 28. See also Dr. Babu's records – Exhibit 15.
[17] Dr. Babu, p. 38 – Exhibit 28.
[18] Dr. Babu, p. 38 – Exhibit 28. See also Dr. Babu's records – Exhibit 15. Frometa, p. 190-191, 197-198 – Exhibit 28.
[19] Br. Babu, p. 40 – Exhibit 28.
[20] Frometa, p. 191 – Exhibit 28.
[21] Dr. Babu, p. 50 – Exhibit 28.
[22] Dr. Babu, pp. 44-45 – Exhibit 28.

and lower spine.[23] He reviewed the MRI films and explained that the herniation in Ms. Frometa's neck, at C3/4 leval, was abutting the thecal sac.[24] The herniation in the lumbar spine, at the L5/S1 level, showed evidence of edema, which was evidence of a recent trauma.[25]

17. Dr. Krishna performed an EMG and nerve conducting testing on March 29, 2007, which revealed a right C5 and L5 radiculopathy.[26] Dr. Krishna also performed a follow-up EMG testing on May 8, 2008, which also revealed radiculopathy.[27]

18. Dr. Krishna explained that the bone spurring noted in the MRI films was unrelated to the accident and nonpathologic.[28] He further explained that the bone spurring shown in the MRIs are on the opposite side of the spinal canal: "It's not related to the spinal canal so it's not really anatomically relevant."[29]    Concerning the other accidents which Ms. Frometa was involved, Dr. Krishna explained:

> "The key for us is that whether or not she had an accident that required any sustained treatment in the form of imaging studies, neurological evaluations, and/or pain management procedures. There was no such treatment in the past. Only after this accident, the clinical symptoms and signs seemed to have gone awry and not resolved with conservative treatment."[30]

19. The future treatment for Ms. Frometa, Dr. Krishna opined, was spinal fusion at the cervical and lumbar spine levels, and a modified combination of pain medication regime.[31] "There is no hope for 100 percent relief at this point."[32] "[G]iven her spine condition is significantly compromised, her need for future care to assist her with some of her daily chores is inevitable."[33]

---

[23] Dr. Krishna, p. 136-138 – Exhibit 28.
[24] Dr. Krishna, p. 139-141 – Exhibit 28.
[25] Dr. Krishna, p. 141-143 – Exhibit 28.
[26] Dr. Krishna, pp. 147, 149 – Exhibit 28.
[27] Dr. Krishna, p. 149 – Exhibit 28.
[28] Dr. Krishna, p. 145 – Exhibit 28.
[29] Dr. Krishna, p. 159-160, 160, lines 1-2 – Exhibit 28.
[30] Dr. Krishna, p. 153, lines 7-12 – Exhibit 28.
[31] Dr. Krishna, pp. 151-152 – Exhibit 28.
[32] Dr. Krishna, p. 152, lines 1-2 – Exhibit 28.
[33] Dr. Krishna, p. 156, lines 23-25 – Exhibit 28.

20. Dr. Krishna opined, within a reasonable degree of medical certainty, that Ms. Frometa's injuries were causally related to the February 14, 2007 accident.[34]

21. Dr. Davy, a board certified physician in anesthesiology and pain management, saw Ms. Frometa on April 20, 2007.[35] He diagnosed her with post-traumatic cervical and lumbar disc pathology with radiculopathy and facet syndrome.[36] He recommended facet point injections, and steroid injections, and if they did not help to alleviate the pain, then percutaneous discectomy.[37] Facet point injections were performed in her neck and lower back with no success.[38] Dr. Davy then performed a series of three steroid injections in Ms. Frometa's lumbar spine and cervical spine.[39] Because all conservative treatment failed, Dr. Davy recommended to surgically remove a portion of the damaged, herniated disc from Ms. Fromata's neck and the surgery was performed on December 13, 2007, percuateous discectomy at the C3/4 level, to relieve the radicular pain in the neck radiating down Ms. Frometa's arms.[40] During the surgery, Mr. Davy observed the herniation in Ms. Frometa's neck and took an intra-operative discogram.[41] While Ms. Frometa had 60% reduction of pain in the week and half after the surgery, the surgery did not alleviate her pain all together.[42]

22. As a consequence, recommendation was made to surgically install spinal cord neuro-stimulators in Ms. Frometa's neck and lower back, which could prevent the transmission of pain signals to her brain.[43] Prior to the testing of the neuro-stimulators, Dr. Davy referred Ms. Frometa to a psychological testing to assure that she is psychologically capable and stable for the testing and, if successful, for the subsequent surgical implantation of the stimulators.[44] Ms. Frometa was fund to be

---

[34] Dr. Krishna, pp. 144, 157, 159 – Exhibit 28.
[35] Dr. Davy, p. 73 – Exhibit 28. See also Dr. Davy's records – Exhibit 12.
[36] Dr. Davy, p. 74 – Exhibit 28.
[37] Dr. Davy, p. 74 – Exhibit 28.
[38] Dr. Davy, pp. 80-81 – Exhibit 28.
[39] Dr. Davy, pp. 75-80 – Exhibit 28.
[40] Dr. Davy, p. 91-93 – Exhibit 28.
[41] Dr. Davy, p. 94-95 – Exhibit 28. See also Dr. Davy's records – Exhibit 12.
[42] Dr. Davy, p. 93 – Exhibit 28.
[43] Dr. Davy, p. 81-85 – Exhibit 28.
[44] Dr. Davy, p. 96 – Exhibit 28.

psychologically stable and the trial process started for implantation of leads into the spine.[45] The pain did not decrease for more than 50% and therefore the trial was unsuccessful and the leads were removed from Ms. Frometa's spine.[46] The future treatment includes the option of an implantation of an intra-thecal drug delivery system and spinal fusion surgery.[47] The clinical spurring maneuver showed that Ms. Frometa suffered from nerve root compression.[48] Dr. Davy opined, within a reasonable degree of medical certainty, that Ms. Frometa's injuries were related to the February 14, 2007 accident.[49]

*Objective testing*

(1)    MRI of the cervical spine, performed on March 10, 2007, showing herniation C3/4 posterior disc herniation with ventral CSF [cerebrospional fluid] impression;[50]

(2)    MRI of the lumbar spine, performed on March 10, 2007, showing a L5/S1 posterior disc herniation;[51]

(3)    EMG testing of her neck showing radiculopathy[52] at C5 and L5.[53]

(4)    Intra-operative x-rays taken by Dr. Babu during the May 17, 2007 surgery.[54]

(5)    Intra-operative discogram taken by Dr. Davy during the December 13, 2007 surgery.[55]

*Operative procedures*

(1) Facet point injections;[56]

(2) Three (3) epidural injections in the neck;[57]

(3) Three (3) epidural injections in the lower back;[58]

---

[45] Dr. Davy, pp. 84-85 – Exhibit 28.
[46] Dr. Davy, p. 86 – Exhibit 28.
[47] Dr. Davy, pp. 86-87, 89, 100 – Exhibit 28.
[48] Dr. Davy, p. 124 – Exhibit 28.
[49] Dr. Davy, pp. 97-98 – Exhibit 28.
[50] Dr. Krishna, pp. 139-143 – Exhibit 28. Dr. Babu, pp. 34-38 – Exhibit 28. See also MRI report –Exhibit 1.
[51] Dr. Krishna, pp. 138, 142 – Exhibit 28. Dr. Babu, pp. 34-38 – Exhibit 28. See also MRI report–Exhibit 2.
[52] Radiculopathy is a nerve root irritation. Dr. R.C. Krishna, p. 147 – Exhibit 28. See Dr. Krishna's records – Exhibit 16.
[53] Dr. Krishna, p. 147 – Exhibit 28. See also Dr. Krishna's records – Exhibit 16. Dr. Davy, p. 94 – Exhibit 28.
[54] Dr. Ramesh Babu, p. 40 – Exhibit 28.
[55] See Dr. Davy's records – Exhibit 12.
[56] Dr. Davy, pp. 74, 80-81 – Exhibit 28. See also Dr. Davy's records – Exhibit 12.
[57] Dr. Davy, pp. 74-80 – Exhibit 28. See also Dr. Davy's records – Exhibit 12.
[58] Dr. Davy, pp. 74-80 – Exhibit 28. See also Dr. Davy's records – Exhibit 12.

(4) Hemilaminotomy and microdiscectomy at the L5/S1 leval;[59]

(5) Percutanous discectomy at the C3/4 level;[60]

(6) Neuro-stimulator trial on the neck;[61]

(7) Neuro-stimulator trial on the lower back.[62]

*Future recommendations*

(1) Spinal fusion;[63]

(2) Intrathecal drug delivery system;[64]

(3) Lifetime care needs.[65]

23. From her pre-accident condition of being a very active and athletic person, Ms. Frometa was reduced to a stage of relying for her basic daily needs and care on her aunt.[66] She has not been able to return to any kind of employment since April of 2007.[67]

24. The first interrogatory of the verdict sheet stated:

> "Has Ms. Frometa proved, by a preponderance of the evidence, that the accident that took place on February 14, 2007, was a proximate cause of any of her injuries?"

25. The jury answered in the negative, rendering a verdict of no cause on the proximate cause issue as to any injury. The jury did not even reach the "serious injury" interrogatory of the verdict sheet.

---

[59] Dr. Babu, pp. 39-42 – Exhibit 28. See also Dr. Babu's records and the operative report – Exhibits 15 & 3.
[60] Dr. Davy, pp. 74, 80 – Exhibit 28. See also Dr. Davy's records and the operative report – Exhibit 12 & 4.
[61] Dr. Davy, pp. 81-85 – Exhibit 28.
[62] Dr. Davy, pp. 81-85 – Exhibit 28.
[63] Dr. Davy, p. 86 – Exhibit 28. Dr. Krishna, p. 151, 167 – Exhibit 28. Dr. Babu, p. 48 – Exhibit 28.
[64] Dr. Davy, pp. 86-87, 89, 100 – Exhibit 28.
[65] Dr. Kincaid, pp. 247-265 – Exhibit 28.
[66] Frometa, pp. 208-209 – Exhibit 28.
[67] Frometa, pp. 191-192 – Exhibit 28.

## DEFENDANTS' DEFENSES

26. During the trial, the defendants contended (1) that Ms. Frometa was involved in two prior accident and three subsequent accidents, and therefore the injuries she sustained might have been caused by these other accidents and not from the February 14, 2007 accident; and (2) the conditions in Ms. Frometa's spine were degenerative and not trauma related.

### A. *The other accidents*

27. While Ms. Frometa has been involved in accidents that were both predated and post-dated the February 14, 2007 accident, not an iota of evidence was introduced that Ms. Frometa has suffered *any injury* from these accident.   Defendants attempted to confuse and confused the jury that an *accident* equates with an *injury*.   In fact, that was not the case with Ms. Frometa.   She clearly explained each accident[68] and there was not a shred of evidence to which defendants could point to a jury that the other accidents/incidents caused any injury to Ms. Frometa.   In effect, defendants urged the jury to speculate, guess and surmise.   As Dr. Babu stated during his cross-examination, "[i]f she had an injury and she had no symptom, it's irrelevant."[69]   As Dr. Krishna explained, the other accidents had no medical significance absent "imaging studies, neurological evaluations, and/or pain management procedures" and symptoms.[70]

28. Consequently, if the jury verdict of no proximate cause was based on the fact that Ms. Frometa was involved in other *accidents*, without any evidence of *injury* arising from these accidents, the verdict was based on nothing more than speculation and guesswork, and therefore cannot be sustained.

---

[68] Frometa, pp. 204-207 – Exhibit 28.
[69] Dr. Babu, p. 58, lines 12-13 – Exhibit 28.
[70] Dr. Krishna, p. 153 – Exhibit 28.

B. *Degenerative conditions*

29. Defendants also argued that the conditions in Ms. Frometa's spine were degenerative in nature. However, the evidence produced by defendant in support of that did not deal with the herniations at issue in Ms. Frometa's cervical and lumbar spine (C3/4 and L5/S1 levels, respectively).

30. Plaintiff's treating doctors who reviewed the MRI films, Drs. Krishna and Babu, testified that they saw herniations in the MRIs and there was edema present.[71] The bone spurring, which was degenerative, was on the other side of spine and had no connection to the disc injuries suffered by Ms. Frometa, as explained by Dr. Krishna.[72] Coupled with the fact that she had positive EMGs, clinical symptoms, no prior injuries or symptoms, the only valid medical diagnosis was that the injuries had a direct causal connection to the February 14, 2007 accident.[73]

31. Defendants' radiologist, Dr. Rothman, conceded that he saw the hernations on the MRIs.[74] Dr. Rothman testified that he cannot opine when the hernations were caused,[75] thereby leaving plaintiff's evidence that the herniations were caused by the February 14, 2007 accident unrebutted. Dr. Rothman also conceded that the surgeons were in the better position to see and evaluate the injuries that they observed during the surgery.[76]

32. Further, defendants did not counter or question the objective EMG testing performed on Ms. Frometa, which showed that she suffered radiculopathy both on her neck and lower back.[77]

33. Both plaintiff's treating and defendants' expert doctors agreed that a herniation could be asymptomatic and become symptomatic with trauma.[78] There was not a single piece of evidence that

---

[71] Dr. Krishna, pp. 141-143 – Exhibit 28.
[72] Dr. Krishna, pp. 145, 161, lines 1-2 – Exhibit 28.
[73] Dr. Krishna, pp. 144, 157, 159 – Exhibit 28.
[74] Dr. Rothman, p. 346, lines 16-18, p. 347, line 4 – Exhibit 28.
[75] Dr. Rothman, p. 347 – Exhibit 28.
[76] Dr. Rothman, p. 349 – Exhibit 28.
[77] Dr. Krishna, p. 147 – Exhibit 28. Dr. Davy, p. 94 – Exhibit 28.
[78] Dr. Babu, p. 48 – Exhibit 28. Dr. Krishna, p. 152 – Exhibit 28. Dr. Crane, p. 289 – Exhibit 28. Dr. Rothman, pp. 344-345 – Exhibit 28.

Ms. Frometa was symptomatic before the February 14, 2007, and all the evidence showed that she became symptomatic as a result of the February 14, 2007 accident.

34. In light of the unrebutted and uncontroverted evidence that Ms. Frometa sustained injuries related to the February 14, 2007 accident, the jury verdict was against the great weight of the credible evidence. The jury did not even reach the "serious injury" interrogatory, but merely found that no injury, whatsoever, was related to the subject accident, not a bruise, no treatment rendered by the EMS, no treatment rendered by the Emergency Room personnel at the hospital on the date of accident, not the herniations shown on the MRIs, not the nerve root irritation confirmed by the EMG testing, not any single aspect of the extensive treatment related to the February 14, 2007 accident. The credible evidence overwhelmingly compels a conclusion to the contrary. The jury verdict was not based upon a fair interpretation of the evidence and was against the great weight of the credible evidence presented at the trial.

## Point One

### PLAINTIFF IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW ON THE FIRST INTERROGATORY BECAUSE SHE HAS ESTABLISHED THAT SHE SUFFERED INJURIES THAT WERE A PROXIMATE CAUSE OF THE FEBRUARY 14, 2007 ACCIDENT.

35. The trial evidence showed that plaintiff suffered injuries related to the February 14, 2007 accident. The evidence was uncontroverted. Under no rational interpretation of the evidence, could the jury find that Ms. Frometa did not sustain *any* injury as a result of the February 14, 2007 accident. The verdict on the first interrogatory was therefore irrational and could have only been a result of sheer surmise and conjecture. The evidence of injuries suffered by Ms. Frometa was so overwhelming that reasonable and fair minded people could have not arrived a verdict that she suffered no injury whatsoever that was a proximate cause of the February 14, 2007 accident.

> "In order to prevail at trial in a negligence case, a plaintiff must establish by a preponderance of the evidence that the defendant's negligence was a proximate cause of plaintiff's injuries. A plaintiff is not required to exclude

every other possible cause, but need only offer evidence from which proximate cause may be reasonably inferred. Plaintiff's burden of proof on this issue is satisfied if the possibility of another explanation for the event is sufficiently remote or technical 'to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence'" (*Burgos v. Aqueduct Realty Corp.*, 92 N.Y.2d 544, 550 (1998) (Kaye, C.J.) (citations omitted).

36. Ms. Frometa met her burden as a matter of law, and the verdict therefore should be set aside and plaintiff granted judgment as a matter of law on the first interrogatory, and a new trial on the remaining interrogatories.

### Point Two

### THE JURY VERDICT ON THE FIRST INTERROGATORY WAS AGAINST THE WEIGHT OF CREDIBLE EVIDENCE, WHICH OVERWHELMINGLY SHOWED THAT MS. FROMETA SUFFERED SIGNIFICANT INJURIES ARISING OUT OF THE FEBRUARY 14, 2007 ACCIDENT.

37. The verdict was against the weight of credible evidence adduced at the trial, and therefore it should be set aside and a new trial ordered. The great weight of trial evidence showed that Ms. Frometa's SUV was rear-ended on February 14, 2007 by a 40- to 60,000-pound sanitation truck, causing serious damage to her car. Photographs of Ms. Frometa's car showing the damage after the accident were admitted in evidence.

38. Paramedics rendered assistance to her at the scene and she was transported to the hospital via an EMS. Her complaints were registered, pain was noted, and pain medication was prescribed. She was treated at the hospital, given prescription medications, and released with recommendation to follow up with a private physician for treatment.

39. She followed up and within nine days, she started an extensive physical therapy regimen four to five times per week. MRIs were performed and revealed herniations in her neck and lower back with edema. EMGs showed that she suffered nerve root irritation in her lower back and neck. She had complaints of radiating pain from her lower spine down to her legs with numbness sand tingling, and

from her neck down to her arms.  She had been unable to resume any employment, whether as a dancer or a flight attendant, since April of 2007.

40. To relieve her pain, surgery was recommended in her lower spine and was performed by Dr. Babu, to remove a portion of the damaged, herniated disc. The surgery helped to alleviate the pain and remove the numbness from her leg, but the pain in the lower back remained.  To relieve the pain, she underwent three facet points' injections in her lower back and three injections in her neck. These injections did not help.  She also underwent three steroid injections in her lower back and three injections in her neck.  These also did not help.  Surgery to remove a portion of the damaged, herniated disc from her neck was also performed.  The pain developed to the degree of being constant, necessitating trial for surgical installation of neuro-stimulators in her neck and lower back to cut the pain signals transmitting to her brain.  The trial installation of the stimulators was too painful for her to bear, necessitating the removal of stimulators.  The future recommendations for her treatment include spinal fusion surgeries and surgical installation of an intra-thecal drug delivery system.  She relies on her aunt to basic daily needs and has lifetime medical care needs.

41. The great weight of credible evidence showed that the February 14, 2007 accident was a substantial contributing factor of the injuries suffered by Ms. Frometa, requiring that the verdict be set aside and a new trial be ordered.

## Point Three

**THE DEFENSE COUNSEL'S REPEATED INFLAMMATORY AND
PREJUDICIAL COMMENTS DURING THE SUMMATION ABOUT
PLAINTIFF'S COUNSEL, THE MISSTATMENTS OF THE LAW,
AND RELIANCE ON MATTERS NOT IN EVIDENCE,
DEPRIVED PLAINTIFF OF A FAIR TRIAL.**

A. *Inflammatory and prejudicial comments*

42. In his summation, the defense counsel repeatedly made inflammatory and prejudicial comments about plaintiff's counsel.  He implied that the surgeries that Ms. Frometa underwent was orchestrated by plaintiff's counsel in concert with the treating physicians to make a claim that did

not exist, that they conspired to omit information from the records, that Ms. Frometa did not have

MRIs in the past 15 months because a benchmark was being set by "team Platta" for new lawsuits.

These vituperative comments transcended the limited of zealous advocacy and substantially

prejudiced Ms. Frometa's right to a fair trial.

43. From the beginning of his summation, the defense counsel started to refer to plaintiff as "team

Platta":

> "She also told you she was involved in a chain reaction in 2004, very little
> details provided. Not really sure why. For that you have to ask team Platta."
> Miller Summation, p. 403, lines 16-18 – Exhibit 28.

44. He blamed plaintiff's counsel for the absence of notations in the records of the treating doctors

concerning the other accidents, despite the facts that there was not a shred of evidence that Ms.

Frometa suffered any injuries from any of the other accidents:

> "Medical records.   No mention of these five motor vehicle accidents
> anywhere?  Anywhere?  Ask team Platta why they did not tell the medical
> providers about it." Miller Summation, p. 404, lines 16-18 – Exhibit 28.

> "Ask team Platta why these histories were not complete."  Miller Summation,
> p. 405, line 7 – Exhibit 28.

45. The defense counsel went further and claimed that the surgery was done for the purpose of the

lawsuit:

> "May 19, she had her surgery by Dr. Babu for the lawsuit which was filed or
> filled out on May 31." Miller Summation, p. 411, lines 12-14 – Exhibit 28.

46. The defense counsel went further to comment that this was a conspiracy and that all doctors and

plaintiff's counsel conspired to create a claim:

> "Let's take a look at team Platta. Let's take a look at this. Think about this.
> We saw that Dr. Krishna introduced -- this is going to take me a second. We
> saw Dr. Krishna introduce Mr. Platta to Dr. Davy at a Christmas party. Okay.
> And he said, and I quote, this is a new young attorney that we work with,
> work with. They work with him. Let's see if I get this team roster correct.
> Dr. Davy leases space from Dr. Krishna, Dr. Krishna refers Dr. Davy over 100

patients a year.  And Dr. Babu meets with patients in Dr. Kaisman's office and Dr. Kaisman is the doctor that wouldn't testify here, is not here.  Dr. Krishna refers to Dr. Babu and let's him use his office to meet with them, but doesn't keep his own file.  And let's not forget Dr. Krishna, the one with the physical therapy where she receives her physical therapy, and the chiropractor, they are all in the same building.  What a team.  What a team.  Dr. Babu testified, and I quote, so I'm the final.  I'm the final guy.

Script was written, the dye was cast on April 9, which was 54 days after this accident."  Miller Summation, p. 414, line 9 to p. 415, line 2 – Exhibit 28.

"If you look at the records in December, Christmas is in December.  Team Platta met with Dr. Davy in December at the Christmas party.  A week or two later, guess what?  Dr. Davy was doing this procedure on Ms. Frometa.  They met.  They are part of the team.  They work together."  Miller Summation, p. 416, lines 11-15 – Exhibit 28.

47.  The defense counsel went as far as to suggest that no subsequent MRIs were taken in the past 15 months, despite Dr. Krishna's testimony that plaintiff needs an MRI once every three years,[79] because claims were being set up for future lawsuits:

"I don't think team Platta has been too credible to you.  You know, talking about what else is missing.  If you take a look -- we did not see single MRI or x-ray taken since March 12, 2007.  She has gone through all of this treatment over the past 15 months of her life, but, yet, we do not see any subsequent medical diagnostic films other than the one that might have been taken during the surgeries or procedure, discogram.  Isn't that odd, don't you think?  You have these back procedures.  You think you would have more.  Why not?  You got to ask yourselves.  I don't know.  Are they setting a benchmark for the other three subsequent accidents for subsequent lawsuits?  I don't know.  I'll tell you this.  It's kind of odd.  Team Platta at work."  Miller Summation, p. 422, line 14 to p. 423, line 2 – Exhibit 28.

"Because when I sit down, Mr. Platta is going to stand up and I need you to keep thinking about what team Platta has done."  Miller Summation, p. 425, lines 17-19 – Exhibit 28.

48.  This was the theme of the defense counsel's summation.  The defense counsel's theme that the claim was fraudulently created and orchestrated by plaintiff's counsel, and that there was a team, "team

---

[79] Krishna, p. 166 – Exhibit 28.

Platta," in concert with all treating doctors, was extremely prejudicial, not based on any evidence, and was done with conscious effort to prejudice plaintiff's right to a fair trial.

B. *Misstatements of the law and the burden of the parties*

49. The defense counsel repeatedly stated that plaintiff should prove that the accident was *the* proximate cause of plaintiff's injuries. This was incorrect as a matter of law. As an initial matter, it was not the defense counsel's role to state the law, since the law was the sole province of the Court. More importantly, the standard is that defendants' negligence was *a*, not *the*, proximate cause of the injuries. See PJI3d 2:70.

> "These are the records that show that Mr. Diaz is not the proximate cause of her injuries." Miller Summation, p. 408, lines 4-5 – Exhibit 28.

> "Mr. Diaz was not the proximate cause of her injuries." Miller Summation, p. 412, lines 6-7 – Exhibit 28.

> "It's not the defense side to prove. It's plaintiff's case to prove. And I submit to you he didn't prove that Mr. Diaz was the proximate cause." Miller Summation, p. 420, lines 17-19 – Exhibit 28.

> "She didn't tell them about this significant accident if you believe that it was the proximate cause of her injuries." Miller Summation, p. 421, lines 4-6 – Exhibit 28.

> "On behalf of Mr. Diaz the defense admitted and conceded responsibility for the happening of this accident. But they vehemently deny that this accident was the proximate cause of her treatment." Miller Summation, p. 424, lines 13-17 – Exhibit 28.

50. The defense counsel further blamed plaintiff for not producing witnesses, suggesting that it was plaintiff's burden to produce non-party witnesses while these witnesses were equally available to defendants. This was improper.

"I did not see plaintiff's radiologist or neuroradiologist testify. I don't know why. What would they have said if they stood on the stand? Why did they [not] call him? You draw the conclusions you want to draw as to why they didn't have a radiologist. Ask team Platta." Miller Summation, p. 406, lines 3-7 – Exhibit 28.

"What did their radiologist tell you? Silence is deafening because him or her didn't take the stand. Could have called him, never did." Miller Summation, p. 411, lines 20-22 – Exhibit 28.

"Who else did we not hear from? We did not hear from Dr. Villafuerte, did not hear from Dr. Kaisman. Where are these doctors? These are the first two doctors she saw nine days, ten days, 12 days after the accident. He didn't put them on the stand. I can't explain to you why he didn't. I'll tell you this. Team Platta has a lot of explaining to do." Miller Summation, p. 412, lines 16-21 – Exhibit 28.

"Ask team Platta why he didn't call the EMTs. Why didn't he put them in the box. I'll tell you why he didn't. Because he didn't want you to hear what they had to say. They come, they sit down in their EMT uniform and all their badges and stuff, and they say, I've been doing this for years. What else are they going to say? They are going to testify according to their report. He didn't do it. He didn't put them on the stand. He didn't call the police officers. You look at the police report when you're back there, take a look. Ask team Platta why he didn't call the police officers. There is only one reason, he doesn't want you to hear what they have to say." Miller Summation, p. 413, lines 13-24 – Exhibit 28.

"Not one family member took that stand to testify on her behalf, not one. Ask team Platta why he didn't call them." Miller Summation, p. 419, lines 23-25 – Exhibit 28.

"You know, what else didn't we see from team plaza [sic]? They keep showing on this big giant screen photos of this car. We didn't see a biomechanic take the stand, someone who is going to come in and say 40,000 pounds crashing into, on a snowy night, in the back of her car. Folks, use your common sense. 40,000 pounds and that amount of damage. That screen is quite appropriate. It shows nothing. Ask him why he didn't bring in the biomechanic. Ask him why the airbag didn't go off. Ask team Platta to explain these. Didn't call the EMTs." Miller Summation, p. 420, lines 6-14 – Exhibit 28.

C. *Reliance on matters not in evidence and hearsay evidence*

51. The defense counsel started his opening by asking the jury to look for evidence that the jury did not

hear:

> "But I just want to touch, highlight some of the testimony you heard and some
> of the stuff that you didn't hear."  Miller Summation, p. 403, lines 10-11 –
> Exhibit 28.

52. For the rest of his summation, his repeatedly reminded the jury to focus on things that they did not

hear from evidence.  He asked the jury to focus on other accidents, attempting to equate them with

injuries, despite absolute lack of any admissible evidence that Ms. Frometa suffered any injury in

any of the other incidents.  The defense counsel asked the jury to draw inferences, without a shred of

medical or admissible evidence, that the other accidents were the cause of all her injuries.  See

Miller Summation, pp. 404-405, 410-412 – Exhibit 28.  By basing his summation on the lack of

evidence, the defense counsel urged the jury to base their decision on surmise and speculation.

53. From page 408 through 412 of his summation (Exhibit 28), the defense counsel discusses hearsay

employment records of plaintiff, including hearsay statement regarding Plaintiff's subsequent

accident, of which no foundation was laid and no witness appeared to authenticate the records or the

statement itself.

D. *Defense counsel's conduct deprived Ms. Frometa of a fair trial*

54. "Quite plainly, a party is entitled to a new trial when opposing counsel's conduct causes prejudice to

that party by appealing to a jury's possible biases, thereby unfairly influencing its verdict."

*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2nd Cir. 1998), *citing Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521 (1931). "Repeated improprieties by one counsel severely prejudice his adversary." *Koufakis v. Carvel*, 425 F.2d 892, 901 (2nd Cir. 1970).

> "Although counsel is to be afforded 'the widest latitude by way of comment, denunciation or appeal in advocating his cause' summation is not an unabridged debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command. There are certain well-defined limits. It is fundamental that the jury must decide the issues on the evidence, and therefore fundamental that counsel, in summing up, must stay within 'the four corners of the evidence' and avoid irrelevant comments which have no bearing on any legitimate issue in the case. Thus the [counsel] may not refer to matters not in evidence or call upon the jury to draw conclusions which are not fairly inferable from the evidence. Above all he should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the [adverse party]" *People v. Ashwal*, 39 N.Y.2d 105, 109-110 (1976) (citations omitted).

55. The defense counsel's argument that the treating doctors, the expert witnesses who testified at the time of trial, were a part of team with plaintiff's attorney and were making up a claim that did not exist was so highly prejudicial, beyond the bounds of zealous advocacy, that these comments deprived Ms. Frometa, the plaintiff herein, from a fair trial. It is well established that an argument that an expert is paid and therefore should not be believed is a serious and reversible error. *See Weinberger v. City of New York*, 97 .D.2d 819, 820 (2nd Dept. 1983); *Rodriguez v. New York City Hous. Auth.*, 209 A.D.2d 260, 260 (1st Dept. 1994) ("counsel improperly intimated that defendant's medical expert was unworthy of belief because he was compensated for his appearance at trial").

56. Here, the defense counsel went even further to intimate that the experts were making up a claim, that the plaintiff's counsel conspired with the doctors to have surgeries performed on plaintiff for the purpose of this trial, that plaintiff's counsel was involved in omitting information from the treating physicians' records. "Such a personal reference to plaintiffs' attorneys and trial counsel with its unsubstantiated implicit charge of subordination of perjury, cannot allow us to rule out the strong

possibility that such remarks influenced the jury." *Weinberger v. City of New York*, 97 .D.2d 819, 820 (2nd Dept. 1983); *see also Vasquez v. Costco Co., Inc.*, 17 A.D.3d 350, 352 (2nd Dept. 2005) ("[t]he defense counsel stepped over the bounds of legitimate advocacy in suggesting to the jury that the Wendell [plaintiff's stepson] had been 'coached,' thus implying that the plaintiff, or his attorney, or someone under the direction of either the plaintiff or his attorney had improperly attempted to induce Wendell to lie").

57. The defense counsel's "improper arguments and using slanderous and baseless epithets" were grossly improper, mandating a new trial. *See Koufakis v. Carvel*, 425 F.2d 892, 900-902 (2nd Cir. 1970). The defense counsel's "conduct appears to have been calculated to influence the jury by considerations which were not legitimately before them, and cannot be dismissed as inadvertent, thoughtless or harmless." *Kohlmann v. City of New York*, 8 A.D.2d 598 (1st. Dept. 1959).

58. When counsel "resort to [inflammatory] practices to win a verdict, they imperil the very verdict which they thus seek." *Johnson v. Lazarowitz*, 4 A.D.3d 334, 335 (2nd Dept. 2004) (brackets in original), *quoting Cherry Creek Nat. Bank v. Fidelity & Cas. Co. of New York*, 207 App. Div. 787, 791 (4th Dept. 1924). "The rule confining counsel to legitimate argument is not based on etiquette, but on justice. Its violation is not merely an overstepping of the bounds of propriety, but a violation of party's rights." *Id*.

59. The cumulative effect of the defense counsel's summation deprived Ms. Frometa from a fair trial. It cannot be said that the comments were harmless and they had no effect on the jury, especially given the strength of plaintiff's case. Ms. Frometa is, therefore, entitled to a new trial.

## **CONCLUSION**

60. For the foregoing reasons, the plaintiff, Adonna Frometa, respectfully requests that the Court issue an Order grating plaintiff's motion to set aside the verdict, granting plaintiff judgment as a matter of law on the first interrogatory, and ordering a new trial on the remaining interrogatories; or, alternatively, setting aside the verdict and ordering a new trial on all interrogatories, together with such other and further relief that the Court deems just and proper under the circumstances.

61. There has been no prior application for the relief sought herein made to this or any other Court.

Dated: New York, New York
      November 3, 2008

                                              SLAWEK W. PLATTA (SP 2699)

## AFFIRMATION OF SERVICE

STATE OF NEW YORK    )
                            ) s.s.:
COUNTY OF NEW YORK  )

      Slawek W. Platta, an attorney admitted to practice law before the courts of the State of New York affirms the following under penalties of perjury, pursuant to CPLR 2106:

That affirmant is not a party to this action and is over the age of 18 years.

That on November 4, 2008, affirmant served the within NOTICE OF MOTION upon the defendant(s) and/or attorney(s) for defendant(s) by ECF filing and by personal service, directed to said individuals or offices as follows:

WILSON ELSER MOSKOWITZ, EDELMAN & DICKER, LLP
150 E 42ND STREET
NEW YORK, NY 10017-5639

these being the respective addresses within the State designated by them for that purpose upon the preceding papers in this action or the respective place where they kept an office between which places there then was and now is a regular communication by mail.

_____
SLAWEK W. PLATTA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADONNA FROMETA,

                      *Plaintiff,*

 -against-

MARIO E. DIAZ-DIAZ, ALL AMERICAN HAUELRS
RECYCLING,

                    *Defendants*.

Index No.: 07CIV6372

## NOTICE OF MOTION

**SLAWEK W. PLATTA, PLLC**
*Attorneys for*:  Plaintiff
42 Broadway, Suite 1927
New York, New York 10004
(212) 514-5100

The undersigned attorney hereby certifies, pursuant to 22 NYCRR §130-1.1-a, that I have read the within papers and that to the best of my knowledge and belief they are not frivolous as that term is defined in 22 NYCRR § 130-1.1(c).

Attorney name: Slawek W. Platta

Service of a copy of the within                            is hereby admitted.
Dated,                         Plaintiff
          Attorney(s) for

PLEASE TAKE NOTICE:
    ☐ NOTICE OF ENTRY
    that the within is a (certified) true copy of an              duly entered in the office of the
    clerk of the within named court on _____ 200__.

    ☐ NOTICE OF SETTLEMENT
        that an order                   of which the within is a true copy
        will be presented for settlement to the HON.          one of the judges of the
        within named Court, at                   on          200___
        at_____ O'clock ___.M.

Dated, November 3, 2008

                           Yours, etc.

                           **SLAWEK W. PLATTA, PLLC**