UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ADONNA FROMETA,                                  :
                                                 :
         Plaintiff,                              :
                                                 :     07 Civ. 6372 (HB)
  - against -                                    :
                                                 :     **OPINION &**
MARIO E. DIAZ-DIAZ and                           :     **ORDER**
ALL AMERICAN HAULERS AND RECYCLING,              :
                                                 :
         Defendants.                             :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

On February 14, 2007, Plaintiff Adonna Frometa ("Frometa") was in the driver's seat of her sport utility vehicle, stopped at an intersection, when her vehicle was rear-ended by a sanitation truck driven by Defendant Mario E. Diaz-Diaz in the course of his employment with Defendant All American Haulers and Recycling. Frometa filed a personal injury lawsuit in New York State Supreme Court, Bronx County, and the case was removed to this Court on July 12, 2007. Defendants did not oppose Frometa's partial motion for summary judgment as to liability for the accident, and therefore the issues at trial were limited to whether the accident was a proximate cause of Frometa's injuries and, if so, the amount of damages.

On September 11, 2008, a jury found that Frometa had failed to prove that the February 14, 2007 vehicle accident proximately caused her injuries. Based on the jury's verdict, this Court issued a Judgment on September 22, 2008, dismissing Frometa's Complaint against Defendants Mario E. Diaz-Diaz and All American Haulers and Recycling ("Defendants"). Frometa now moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 or, in the alternative, a new trial pursuant to Fed. R. Civ. P. 59. For the reasons set forth below, Frometa's motions are denied.

## I. BACKGROUND

During the early morning hours of February 14, 2007, Frometa was in the driver's seat of her sport utility vehicle, which was fully stopped, when her vehicle was rear-ended by a sanitation truck driven by Defendant Diaz-Diaz in the course of his employment with Defendant All American Haulers and Recycling. (Trial Transcript ("Tr.") 182, Ex. 28 to Pl.'s Mot.) Frometa called 911, and an ambulance arrived and took her to Cabrini Medical Center in New

1

York City for emergency care. (Tr. 182.) Although Frometa testified that she "blacked out" after the accident, the Emergency Medical Services ("EMS") report does not indicate that she lost consciousness. (Tr. 182, 216; EMS Report, Pl.'s Mot. Ex. 9.) The doctors at the hospital performed a computed axial tomography ("CAT") scan, administered medication and discharged Frometa with pain medications and instructions to follow up with a doctor for treatment. (Tr. 184.)

The evidence at trial showed that, according to Frometa's employment records, two days after the accident, on February 16, 2007, Frometa worked as a flight attendant during a flight from Colorado to New York at 4:32 a.m. (Tr. 218-19.) Because Frometa was involved in the accident in New York during the early morning hours of February 14, she must have flown from New York to Colorado on February 14 or 15, in order to work the flight attendant shift from Colorado to New York in the early morning of February 16. (*See* Tr. 218-19.) However, Frometa testified that she remained home on February 14 and 15 because she felt stiff. (Tr. 220.)

At trial, Frometa's employment records showed that later in the day on February 16, 2007, she worked for eight and a half hours as a flight attendant on flights within New York and from New York to Colorado. (Tr. 218-20.) The next day, on February 17, 2007, Frometa worked at her other job as a professional dancer. (Tr. 226.) On February 19, Frometa worked again as a flight attendant, on a flight from West Palm Beach, Florida to Aspen, Colorado. (Tr. 220-21.) Further, her employment records show that from February 17 to April 18, 2007, Frometa worked twenty days as a professional dancer. (Tr. 220-21.)

On February 23, 2007, Frometa visited Dr. Albert Villafuerte for pain in her neck and back, as well as tingling and numbness in her legs, and Dr. Villafuerte referred her to a neurologist and recommended that she obtain magnetic resonance imaging ("MRI") scans of her cervical and lumbar spine. (Tr. 185.) On March 10, 2007, MRI scans of Frometa's neck and back revealed herniated discs in both her cervical and lumbar spine and cerebrospional fluid impression in her cervical spine. (Pl.'s Mot. Ex. 2.) On March 27, 2007, Frometa saw Dr. Arden Kaisman, a pain management specialist, who recommended epidural steroid injections, which Frometa did not undergo due to her fear of needles. (Tr. 190.) Dr. Kaisman recommended that Frometa see Dr. Ramesh Babu, a board certified neurosurgeon and Assistant Professor of Clinical Neurosurgery at New York University School of Medicine. (Tr. 32-33, 190.)

Dr. Babu reviewed the MRI films and determined that Frometa had suffered herniations in her cervical and lumbar spine, which compressed the nerve roots between several vertebrae.

(Tr. 35-38.)  Dr. Babu recommended surgery to remove the herniated discs and on May 17, 2007, performed hemilaminotomy and microdiscectomy, *i.e.*, spine surgery, on Frometa's lower back.  (Tr. 38, 190-91, 197-98.)  The surgery was partially successful as it helped Frometa regain feeling in her legs.  (Tr. 198.)  However, because Frometa reported that she continued to feel pain, Dr. Babu determined that she required further care.  (*See* Tr. 50.)

Meanwhile, on March 29, 2007, Frometa had also seen Dr. R. C. Krishna, a board certified neurologist and Diplomat of the American Board of Psychiatry and Neurology, who reviewed the MRI films and explained that the herniation in Frometa's cervical spine was abutting the thecal sac.  (Tr. 134-35, 139-41.)  He also testified that the herniation in her lumbar spine evidenced edema, which signified recent trauma.  (Tr. 143.)  Dr. Krishna performed two electromyography ("EMG") scans, on March 29, 2007 and May 8, 2008, both of which revealed radiculopathy.  (Tr. 147, 149.)  Dr. Krishna determined that Frometa's future treatment should include a spinal fusion at the cervical and lumbar spine as well as a regime of pain medications.  (Tr. 151-52.)

Finally, Dr. Davy, a board certified physician in anesthesiology and pain management, also testified at trial.  After he examined Frometa on April 20, 2007, he diagnosed her with post-traumatic cervical and lumbar disc pathology with radiculopathy and facet syndrome.  (Tr. 73-74.)  He recommended spinal injections, including steroid injections, and, if these did not alleviate her pain, percutaneous discectomy.  (Tr. 74.)  After a series of facet point and steroid injections failed to ameliorate Frometa's pain, Dr. Davy recommended that Frometa undergo surgery to remove a portion of the herniated disc from her neck.  (Tr. 91-93.)  Consequently, on December 13, 2007, Frometa underwent percutaneous discectomy of her cervical spine.  (Tr. 91-93.)  Dr. Davy testified that while Frometa's pain was reduced for a week and a half thereafter, she reported that the surgery ultimately did not assuage her pain.  (Tr. 93.)

Dr. Davy then recommended that Frometa have neurostimulators installed in her spinal cord as a method of pain management.  (Tr. 81-85.)  Dr. Davy installed temporary "trial" stimulators in her spine, but as these were not successful in decreasing her pain by more than half, he determined that the trial was unsuccessful and removed them.  (Tr. 86.)  Dr. Davy testified that Frometa's future treatment could include implantation of an intra-thecal drug delivery system and spinal fusion surgery.  (Tr. 86-87.)

Frometa testified that, while she had been active and athletic throughout her life, the injuries from the February 14, 2007 accident force her to rely on her aunt for her basic daily

3

needs.  (Tr. 208-09.)  She testified that she has been unable to continue in her jobs as a flight attendant and dancer and has not worked since April 2007.  (Tr. 191-92, 211.)

Plaintiff's Complaint alleged that Defendants' negligence caused her to sustain "serious injuries" as defined in Section 5102(d) of the New York Insurance Law and to sustain economic loss greater than basic economic loss pursuant to Section 5012 of that statute.

Defendants did not oppose Frometa's partial motion for summary judgment as to liability for the car accident.  Therefore, the issues at trial were whether the accident was a proximate cause of Frometa's injuries and, if so, the amount of damages.  After deliberating for approximately an afternoon and morning, the jury found unanimously that the accident was not a proximate cause of Frometa's injuries, and so did not reach the issue of damages.

## II. LEGAL STANDARDS

With respect to a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, the Second Circuit has instructed that

> [j]udgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor. . . . In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, . . . and it may not itself weigh the credibility of witnesses or consider the weight of the evidence . . . .  Thus, judgment as a matter of law should not be granted unless
>
> '(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the defendants].'

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (internal citations omitted) (quoting *Cruz v. Local Union No. 3 of the Int'l Brotherhood of Electrical Workers*, 34 F.3d 1148, 1154 (2d Cir.1994) (internal quotation marks and citation omitted)).  The court "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) (quotation marks and citation omitted).  The court must make credibility assessments, and draw all inferences, against the moving party. *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993).

On the other hand, faced with a motion for a new trial pursuant to Fed. R. Civ. P. 59, the court need not assess credibility and draw inferences against the moving party, but may

independently weigh the evidence.  *See, e.g.*, *Song v. Ives Labs, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992).  The court has significant discretion in deciding whether to grant a Rule 59 motion for a new trial.  *See, e.g.*, *Amato v. City of Saratoga Springs*, 170 F.3d 311, 314 (2d Cir. 1999).  A motion for a new trial "may be granted even if there is substantial evidence to support the jury's verdict."  *Id*.  A jury's verdict, however, should not be disturbed unless it is seriously erroneous:

> The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence . . . ; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result.  The judge's duty is essentially to see that there is no miscarriage of justice.

*Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978); *see also Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000) ("A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.") (quotation marks and citation omitted).

### III.  DISCUSSION

Frometa argues that the jury's verdict should be set aside because she established at trial that the February 14, 2007 accident was a proximate cause of her injuries, and because alleged improprieties committed by the defense counsel during his summation deprived her of a fair trial.

**A.    Proximate Cause**

Under New York law, to find that the February 14, 2007 accident proximately caused Frometa's injuries, the jury had to find that the accident was a "substantial factor in bringing about the injury."  *See, e.g.*, *Forlastro ex rel. Estate of Forlastro v. Collins*, No. 07 Civ. 3288, 2008 WL 2791277, at *4 (S.D.N.Y. July 18, 2008).  "There may be one, or more than one, substantial factor."  *Id.*  Accordingly, at trial, the jury was instructed that

> Ms. Frometa has the burden of proving, by a preponderance of the evidence, that her damages were proximately caused by the accident that occurred on February 14, 2007.  The accident is a proximate cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury.  There may be more than one cause of an injury, but to be substantial it cannot be slight or trivial.
>
> The fact that Ms. Frometa may have a physical condition, such as some amounts of degeneration of the spine, which makes her more susceptible to injury than a person who does not have any spinal degeneration, does not relieve the defendant of liability for all injuries sustained as a result of the accident.  Put another way, the defendant takes the plaintiff as they find her.  The defendants are liable even

though those injuries are greater than those that would have been sustained by a normal healthy person under the same circumstances.

(Tr. 468.)

The first interrogatory on the verdict sheet asked the jury: "Has Ms. Frometa proved, by a preponderance of the evidence, that the accident that took place on February 14, 2007, was a proximate cause of any of her injuries?" The jury answered, "No."

"It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge." *Britt v. Garcia*, 457 F.3d 264, 272 (2d Cir. 2006) (quotation marks and citation omitted); *see also United States v. Becker*, 502 F.3d 122, 130 (2d Cir. 2007) (courts must "presume that juries follow limiting instructions," unless "there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense"). Here, the record contains no indication that the jury was unable to follow this Court's instruction on proximate cause. After approximately an afternoon and morning of deliberation, the jury determined unanimously that Ms. Frometa had failed to prove that the February 14, 2007 accident was a proximate cause of any of her injuries.

Here, there was neither "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," nor "such an overwhelming amount of evidence in favor of [Frometa] that reasonable and fair minded [persons] could not arrive at a verdict against [the defendants]." *See Galdieri-Ambrosini*, 136 F.3d at 289. Nor was the jury's finding "seriously erroneous." *See Bevevino*, 574 F.2d at 684.

At trial, Defendants elicited considerable testimony and produced substantial evidence that undermined the credibility of Frometa and her doctors with respect to her pain and inability to work caused by the accident. For example, Frometa continued to work for approximately two months after the accident, including the days immediately following it, as a flight attendant and as a dancer, both positions that require significant exertion to say nothing of flexibility. (Tr. 218-21.) Dr. Davy testified that a herniated disc typically causes significant pain from the outset, yet Frometa testified that she worked, albeit in pain, for two months after the accident. (*See* Tr. 125.) Further, a reasonable jury could question Frometa's truthfulness when she testified that the accident caused her to "black out," since the EMS record did not indicate that she had lost consciousness. (*See* Tr. 182.)

The record at trial could also have led a reasonable juror to conclude that a subsequent accident in which Frometa was involved was the sole cause of her injuries, and not the February

6

14, 2007 accident. Frometa's employment records noted that Frometa was in a subsequent car accident on March 16, 2007, or at least told her employer that she was, even though at trial she testified that she could not recall any car accident on that date. (*See* Tr. 229-31.) Earlier, but still after the accident at issue in this lawsuit, on March 8, 2007, Frometa rented a car, which she returned in a damaged condition; Frometa testified that the car rental company had accused her of being in an accident. (Tr. 231.) A jury could reasonably conclude that one of these accidents caused her injuries, and not the February 14, 2007 accident. Indeed, the MRI scans were not taken until March 10, 2007, and Frometa did not see Drs. Kaisman, Babu or Krishna until March 27 or thereafter. Frometa also testified about prior car accidents. (Tr. 204-08.)

Finally, it would not have been seriously erroneous for the jury to have concluded that Frometa's injuries were due to an excessively aggressive treatment regimen prescribed by her doctors. For example, Dr. Edward Crane, who examined Frometa at Defendants' request on March 13, 2008 and was a witness whom Frometa subpoenaed to testify at trial, told the jury that he did not understand why Dr. Babu performed the hemilaminotomy and microdiscectomy surgery on her spine, since "[Dr. Babu] saw her on one occasion, she had no objective neurologic findings, [and] she had very minor abnormality on her MRI." Dr. Crane testified that he could not agree with Dr. Babu's choice of procedure or, in fact, his decision to do any procedure at all. (Tr. 302-03; *see also* Tr. 285, 308.) Dr. Crane testified that it was not believable that Frometa's entire right side of her body would be numb, as Frometa complained, because it is not possible for a patient with her injury to have total numbness on one side. (*See* Tr. 326-27.) Dr. Babu, who performed surgery on Frometa on May 17, 2007, only three months after the accident and one month after Frometa stopped working, testified that Frometa had "tried conservative management, which is the first step of treatment that failed," and that surgery was "the other resort." (Tr. 39.) A reasonable jury could conclude that the surgery was performed too soon, before more conservative treatment, such as physical therapy—or merely a reprieve from the physical demands of her jobs—were given time to work. Dr. Babu himself testified that "most herniated discs do subside with conservative management." (Tr. 59.)

In light of the evidence at trial and the deference afforded to a jury verdict, neither judgment as a matter of law nor a new trial is appropriate.

**B.**     **Defense Counsel's Summation**

Frometa argues that this Court should order a new trial due to certain of the defense counsel's statements during his summation.

### *1.      Inflammatory Statements*

First, Frometa asserts that, during his summation, Defendants' attorney made inflammatory and prejudicial comments about Frometa's counsel and doctors.  Indeed, one theme of the defense appeared to be that Frometa's doctors and lawyer had conspired to exaggerate her medical condition and subject her to procedures that may have been unnecessary, in order to collect fees.  For example, during summation, defense counsel referred repeatedly to "team Platta"[1] and implied that "team Platta" had withheld information about Frometa's prior and subsequent motor vehicle accidents from the doctors.  (*See* Tr. 404-05 ("Medical records.  No mention of these five motor vehicle accidents anywhere?  Anywhere?  Ask team Platta why they did not tell the medical providers about it. . . . Ask team Platta why these histories were not complete.").)

The defense counsel also insinuated that the surgery by Dr. Babu was done for purposes of the lawsuit:  "May 19, she had her surgery by Dr. Babu for the lawsuit which was filed or filled out on May 31."  (Tr. 411.)  Further, the summation implied that the relationships among the doctors and lawyer were suspicious:

> Let's take a look at team Platta. . . . We saw Dr. Krishna introduce Mr. Platta to Dr. Davy at a Christmas party.  Okay.  And he said, and I quote, this is a new young attorney that we work with, work with.  They work with him.  Let's see if I get this team roster correct.  Dr. Davy leases space from Dr. Krishna, Dr. Krishna refers Dr. Davy over 100 patients a year.  And Dr. Babu meets with patients in Dr. Kaisman's office and Dr. Kaisman is the doctor that wouldn't testify here, is not here.  Dr. Krishna refers to Dr. Babu and lets him use his office to meet with them, but doesn't keep his own file.  And let's not forget Dr. Krishna, the one with the physical therapy where she receives her physical therapy, and the chiropractor, they are all in the same building.  What a team.  What a team.  Dr. Babu testified, and I quote, so I'm the final.  I'm the final guy.
>
> . . . Team Platta met with Dr. Davy in December at the Christmas party.  A week or two later, guess what?  Dr. Davy was doing this procedure on Ms. Frometa.  They met.  They are part of the team.  They work together.

(Tr. 414, 416.)

At the close of the defense's summation, the defense counsel speculated as to why no MRI had been taken since March 12, 2007, saying that "I don't think team Platta has been too credible to you," and suggesting that no MRI was taken because "team Platta" was "setting a benchmark for the other three subsequent accidents for subsequent lawsuits."  (Tr. 422-23.)

---

[1] Frometa's attorney is Slawek Platta, Esq.

"Federal courts have recognized unfair prejudice and ordered new trials where attorneys have unfairly influenced the jury by attempting to exploit its regional bias . . . or by injecting irrelevant allegations about the opposing party into the case, *see, e.g., Jimenez v. Heyliger,* 792 F. Supp. 910, 919-20 (D.P.R. 1992) (setting aside verdict in a medical malpractice suit due in part to defense counsel's statement that plaintiff was a 'precocious and promiscuous young woman')." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998) (holding that inflammatory language in summation about discrimination on the basis of sexual preference did not justify a new trial). However, "[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005) (quoting *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)).

Such is not the case here. The defense counsel did not seek to exploit any bias that the jury might have, nor were his reference to or allegations against "team Platta" irrelevant. In the course of the trial, Defendants elicited testimony and produced evidence that provided support for the defense. For example, Dr. Davy testified that, at a holiday party, Dr. Krishna introduced Frometa's lawyer to him as "one of the newer lawyers who we work with," that Frometa's doctors commonly make referrals among one another, and that Dr. Davy leases space from Dr. Krishna. Frometa visited Dr. Davy a couple months after Frometa's lawyer was introduced to him by Dr. Krishna. (*See* Tr. 90, 117-18.) While the defense's summation was undoubtedly aggressive and argumentative, it is not *per se* grounds for a new trial. *See Marcic*, 397 F.3d at 124 ("In particular, where the jury's verdict finds substantial support in the evidence, counsel's improper statements will frequently be *de minimis* in the context of the entire trial."). Here, the jury's verdict was supported by evidence that the February 14, 2007 accident did not proximately cause Frometa's injuries, as discussed *supra*.

In this Circuit, Frometa relies principally on *Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970), where the Court ordered a new trial on the grounds that the plaintiff's counsel had repeatedly used "slanderous and baseless epithets," *see id.* at 901-03, and engaged in personal attacks on the defense counsel during summation, *see id.* at 904 & n. 16. *See also Marcic*, 397 F.3d at 127 (summarizing and distinguishing *Koufakis*). In *Koufakis*, the Court found that "[t]hroughout his presentation at trial and in summation, [counsel] repeatedly went beyond the bounds of propriety and characterized opposing counsel [and the defendants], and the testimony of witnesses . . . in a manner wholly unjustified by anything in the record." 425 F.2d at 901. For

9

example, the counsel drew repeated analogies between the defendants and the Mafia. *See id.* Further, throughout his opening statement, the trial and summation, the counsel made comments to the effect that "the case was one which pitted a 'little' and virtuous man of modest resources against a powerful and unscrupulous man with untold wealth." *Id.* at 902. The Court held that "[r]emarks such as these, which can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor, are grounds for a new trial." *Id.* Finally, the Court found that the counsel's "summation was replete with improper personal references to himself, and to . . . trial counsel for the [defendants]." *Id.* at 904.

Here, in contrast, the conduct complained of took place only during the defense counsel's summation, and not throughout the course of the trial. The defense counsel's "team" analogy was hardly as prejudicial as the "Mafia" analogy in *Koufakis*. Indeed, the Circuit has distinguished *Koufakis* and held that the inflammatory commentary by the defense counsel in *Marcic* "d[id] not rise to the level of what has been held to be so prejudicial as to require a new trial." 397 F.3d at 127. In *Marcic*, the defense counsel, like defense counsel here, "certainly suggested that [the plaintiff] and his witnesses were willing to lie to make money," but the Court noted that "counsel did not engage in personal attacks on opposing counsel, nor did he utilize epithets or slurs, or appeal to the jury's regional, economic, or other prejudices." *Id.* Similarly, here, while the defense counsel intimated that the plaintiff's attorney worked as a "team" with Frometa's doctors and withheld information about Frometa's medical history and other car accidents from her doctors, such insinuations were not without some support in the record.

"Not every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted." *Matthews v. CTI Container Transport Int'l, Inc.*, 871 F.2d 270, 278 (2d Cir. 1989), quoted in *Marcic*, 397 F.3d at 127. The defense counsel's summation does not rise to the level of impropriety that would require a new trial.

### 2.   *Alleged Misstatements of Law and Reliance on Matters Not in Evidence*

Frometa also argues that she was deprived of a fair trial because the defense counsel misstated the law and relied on matters that were not in evidence during his summation. First, the fact that the defense counsel referred to "the" proximate cause instead of "a" proximate cause is of little consequence, as the jury was properly instructed that "[t]here may be more than one cause of an injury" and the jury charge referred repeatedly to "a" proximate cause. Second, Frometa argues that she is entitled to a new trial because the defense counsel told the jury that

10

Frometa had failed to call certain doctors and other witnesses, such as members of her family, to testify. However, the jury was instructed that

> [t]he law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at the trial. Keep in mind, with respect to witnesses, they are equally available to both sides. Put another way, either side was able to call any witness it chose to call.

(Tr. 467.)

The jury was further charged that "[i]n determining the facts, you must rely upon your own recollection of the evidence. Anything that counsel may have said . . . during argument is not to be substituted for your own recollection and evaluation of the evidence," (tr. 456-57), and that "[c]ertain things are not evidence and are to be disregarded in deciding what the facts are. They include arguments or statements by lawyers, including openings and summations," (tr. 460). As the jury is presumed to have followed the Court's instructions, there is little or no basis to conclude that the defense counsel's references to people who did not testify created "undue prejudice or passion which played upon the sympathy of the jury." *See Matthews*, 871 F.2d at 278.

Finally, while the trial judge's obligation to assure the litigants of a fair trial "does not arise only when objections are raised," *see Koufakis*, 425 F.2d at 900, it is worth noting that Frometa's counsel never objected during the defense counsel's summation. Further, the defense counsel's summation comprised twenty-three pages out of more than four-hundred pages of trial transcript. *See Marcic*, 397 F.3d at 127 ("To the extent that [the defendant's] counsel's statements were improper, they were not objected to, and occurred in the context of a summation spanning thirty-seven pages of trial transcript, at the end of a week-long trial in which voluminous evidence was introduced that sufficed to support the jury's verdict.").

## II. CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED. The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**December 10, 2008**

_____
**U.S.D.J.**

11